## N. Y. SUPERIOR COURT.

### JOHN T. HOWARD, plaintiff and respondent agt. ISAAC T. SMITH, defendant and appellant.

Whenever it appears by the *judgment* of a sister state, that the defendant *appeared by attorney*, it is presumptive evidence of the fact, but in such a case the defendant may *retort* this presumption *by proof*, that the attorney named in the record never had any authority to appear for him. In other words, notwithstanding the recital of the record, he may disprove the authority of the attorney to appear.

Where an action is brought upon such a judgment in this state, the question of the authority of the attorneys who appeared for the defendant in the sister state becomes a contested question of fact, upon which there is evidence on both sides, it is error to withhold that question from the jury, for which a new trial will be granted.

*General Term, April,* 1870.

*Before* BARBOUR, JONES *and* SPENCER, *Justices.*

THIS action was brought to recover the amount of a judgment rendered in the district court of California, August 22, 1851, in favor of Abijah T. Everett and, others against the defendant Isaac T. Smith, for the sum of $1,326 87, and interest, at the rate of ten per cent. per annum, from the date of the judgment.

The plaintiff in this action, claims to be the assignee and owner of said judgment.

The defenses to the action were, *first,* the attorneys who appeared in the action in California, for defendant, had appeared without authority, (no original process having been served upon defendant), and consequently, the judgment was a nullity, *second,* that no assignment of the judgment has been made to plaintiff, *third,* a plea of payment.

The points and exceptions and evidence considered by this court in the decision of the appeal, appear in the opinion.

Howard agt. Smith.

GEORGE C. BARRETT, GEORGE PUTNAM SMITH, *of counsel for defendant and appellant.*

In 1850-51, the defendant was the owner of certain vessels running between New York and San Francisco. He had at that time, as his special agent and consignee in San Francisco, one Edward Rogers, whom defendant had sent out to take charge of his business.

Rogers, subsequently, the exact date does not appear, .employed the firm of Beck & Palmer, to transact certain minor details of his business, though he had no power of substitution nor authority to constitute them sub-agents, and after as before their employment, Rogers carried on the correspondence and accounting with defendant.

Rogers, also, employed the law firm of Chetwood, Edwards, Rose & Turk, in such law business as arose in the course of his agencey.

In 1850, certain coal was shipped on the *Haidee,* one of defendant's vessels, consigned to E. Rogers, for the freight on which notes of J. Howard & Son were given. Before the *Haidee* reached San Francisco, Howard & Son failed, and their notes were protested. Rogers, learning this, refused .to deliver up the coal till the freight was paid in San Francsico.

An action was then, February 6, 1851, brought by the consignees of the coal, Everett & Co., against the captain of the *Haidee,* and afterwards, August 8, 1851, against the defendant personally.

In this latter action, Chetwood, Edwards, Rose & Turk appeared for Mr. Smith, being authorized thereto by Beck & Palmer. There being no proof that Rogers knew anything about it, and Mr. Smith expressly denying, that he ever heard of the matter until the present action was commenced.

Certain proceedings were had in this action in California, and a judgment in favor of A. P. Everett & Co., was obtained against him, which judgment, the plaintiff alleges, was

assigned to J. Howard & Son, and thence came into his possession. The assignment itself, he was unable to produce.

I. The justice erred in not submitting to the jury the question, whether the plaintiff was the owner of the judgment.

The only witness called to prove the existence of any assignment of Everett & Co.'s judgment was, the plaintiff himself, whose testimony showed, that it·was executed by but one of the three original plaintiffs, and by him delivered to the plaintiff.

It fails to show also whether that member of the firm ever attempted or was authorized to sign the firm name.

Concerning its date, tenor and consideration, whether witnessed and under seal; whether it was in.such form as to prove itself, or whether proof of the assignor's handwriting would have been necessary, or the production of a subscribing witness; where and when he received it, and what he did with it, he was able to give no evidence whatever.

As this was an attempt by an interested witness to prove the existence of a paper on which the action was based—which had been by his own testimony in his possession for many years, during which period the firm to which it had been assigned, had ceased to exist, leaving him as survivor in 1857, to close up its affairs—notwithstanding which he never looked for the paper till this action was commenced, never demanded payment of the claim, and did not commence this action till the claim was nearly outlawed, it was fitting that the jury should take all the facts into consideration, and determine whether such an assignment had ever in fact been made and delivered, or whether his supposed ownershihp was a mere delusion based upon the fact, that many other things were assigned to him, coupled with the recollection, that his firm were interested in the recovery of this judgment. In fact, he may have looked upon it as his own, without an assignment. How easy under such cir-

cumstances to suppose, that it must have been and was assigned to him with the other things received at the time.

II. The justice erred in not submitting to the jury the question, whether the attorneys who appeared for the defendant in California, were duly authorized thereto.

(*a.*) This was a most vital question.

"An unauthorized appearance is a nullity" (*Bean* agt. *Mather*, 1 *Daly*, 440).

(*b.*) The defendant had a right to disprove the apparent authority.

"If it appear by the record, that the defendant was not served with process, and did not appear in person or by attorney, the judgment is void. If it appear by the record, that the defendant appeared by attorney, the defendant may disprove the authority of such attorney to appear for him" (*Shumnay* agt. *Stillman*, 6 *Wend.*, 447, 453; *See also Starbuck* agt. *Murray*, 5 *Wend.*, 148; *Long* agt. *Long*, 1 *Hill*, 597; *Noyes* agt. *Butler*, 6 *Barb*, 613; *Harrod* agt. *Barretto*, 2 *Hall*, 302).

(*c.*) The evidence given on the part of the defendant showed clearly an utter want of authority in these attorneys.

(1.) Mr. Smith testified, that they had no such authority, that he never employed them nor authorized them to appear for him. And that alone entitled him to go to the jury. Whether such testimony was credible or incredible, in view of all the facts, was for the jury alone.

(2.) The evidence is clear, that the only employment was by Beck & Palmer, and it was in writing. It is equally clear, that the latter had no authority whatever to bind Mr. Smith. They had not even authority from Mr. Rogers to authorize this appearance; nor, if they had, would it have availed, as Rogers had no power to substitute; nor had Rogers himself, even in his very general power, any authority to give courts jurisdiction over his principal in actions *in personam*, for damages.

(3.) This view is not affected by the fact, that the law firm was employed by Mr. Rogers in other matters, nor by the fact, that they may have corresponded with Mr. Smith, respecting the *Haidee*. This gave no authority to appear for him in an action *in personam*, of which the court could otherwise have acquired no jurisdiction. But we would not have complained, had the court merely instructed the jury to take these facts into consideration, and to say upon all the facts, and considering everything, including the great lapse of time, whether we had made out a case of want of authority.

(4.) The same remarks apply to the lawyers' accounts, &c., rendered to Beck & Palmer, with the additional suggestion, that they were the merest hearsay, and that singularly enough, there is not a single charge for a fee in any suit of *Everett* agt. *Smith*. There seems to be a charge for a service rendered *Haidee*, but surely there was nothing in that to notify any one that a suit *in personam* had been commenced, or had resulted in a judgment, and no letter from the attorneys to Mr. Smith, in any way refers to this suit.

III. The justice erred in refusing to permit defendant's counsel to prove, that by the laws of California, the judgment was not only outlawed, but that it had been absolutely extinguished as a debt.

Though a foreign statute of limitations affecting the remedy only is not a bar to an action brought here, a statute of the *locus contractus* which extinguishes the right, is a bar everywhere (*Beckford* agt. *Wade*, 17 *Vesey*, 86; *Lincoln* agt. *Battelle*, 6 *Wend.*, 75; *Townsend* agt. *Jennison*, 9 *How.*, *U. S.* 407, 419; *Shelby* agt. *Guy*, 11 *Wheat.*, 361; *Story, Conflict of Laws*, 582).

Whether the California statute be of such a nature or not, the defendant had the right at least to attempt to prove it such, and the refusal to allow him to so do was a very grave error.

IV. The justice erred in not allowing the offer referred to

in the last point, and also the offer of defendant's counsel to show that "in California and by its laws such facts can be proved without being pleaded," upon the ground that limitation was not pleaded in this action.

Even if the defendant had failed to prove, that the Calfornia statutes were what he claimed, the proof that the claim there was barred by a *lex loci contractus* in the form of a mere statute of limitations, affecting the remedy and not the right, this latter fact would raise a presumption, that the debt had been paid (*Ruggles* agt. *Keeler*, 3 *Johns.*, 263, 268 ; *Le Roy* agt. *Crowninshield*, 2 *Mason*, 151, 165).

"When a process is brought in Scotland for the payment of an English debt, after the English prescription has taken place, it cannot be pleaded here, that the action is cut off by the statute of limitations; but it can be pleaded here and will be sustained, that the debt is presumed to have been paid. Considering that the statute can have no authority here except to infer a presumption of payment, it follows, that the plaintiff must be permitted to defeat the presumption by positive evidence, or to overbalance it by or to show from the circumstances of the case that payment cannot be presumed" (*Lord* KAIMES, *Eq.*, *Ch.* 836).

The existence of the foreign statute raised a presumption of payment. Payment had been pleaded by the defendant. No evidence had been brought by the plaintiff to rebut that presumption. All the "circumstances of the case" favored that presumption, and the question whether limitation was pleaded had nothing to do with the force of the offer.

V. The justice erred in not submitting to the jury as one of fact, the question whether there is not a presumtion of the payment of this judgment arising from lapse of time.

"Even though the statute cannot be pleaded; the fact of payment may still be presumed by a jury from lapse of time or from circumstances which render it probable" (*Best on Presumptions*, 188 ; *Starkie on Evi.*, 2 *Am. Ed.*, 1089).

Both the "lapse of time" and the "other circumstances"

here, strongly favor the defendant.  The judgment was re-
covered in 1851.   The plaintiff claims to have got it in 1851
or 1854; he swears he never looked at it or searched for it
till this action was begun, and no demand was ever made
upon it.   No evidence was introduced to show, that a judg-
ment obtained years ago upon this claim would not have
been paid by the defendant.   On the other hand, defendant
swears, that he settled up all accounts with his agent Rogers,
and at that time heard nothing which could lead him to
suppose that Rogers had left a judgment unpaid; that he
has resided in this city for years past; that he has known
Howard, and frequently seen him, but never heard a word
about this claim until this action was begun in 1868.

Payment of a claim has in certain cases been inferred from
a much shorter time than this (*Lucas* agt. *Norvosileski*, 1
*Esp*,. 296; *Sellen* agt. *Norman*, 4 *C. & P.*, 80).

VI. The justice erred in not dismissing the complaint upon
the ground, that the judgment was on its face irregular and
invalid.

(*a.*) Apart from all other irregularities, and they are gross
and jurisdictional, there is no judgment in favor of the plain-
tiff's assignors at all.   The paper called a judgment is
signed by no one, is entitled in no court, and seems to be in
favor of a firm of A. P. Everett & Co.   There is no evi-
dence that this firm is the plaintiff's assignor; on the con-
trary, the assignor is stated to have been the firm of Everett
& Co., composed of three individuals.   We submit there is
no connection established between the two, and if there
were, there is no evidence that A. P. Everett & Co., ever
commenced a suit against the defendant.   It seems, that
three persons doing business under the firm of Everett &
Co., attempted to commence a suit, but no one else did, nor
did any other firm.

VII. The justice erred in directing that the interest on
said judgment should be calculated at ten per cent.

A judgment of a foreign court is here a simple contract

(*Hubbell* agt. *Cowdry*, 5 *Johns.*, 132 ; *Bissell* agt. *Hall*, 11 *Johns.*, 168).

As such it bears interest at the rate allowed in the state where the original record was (*Ralph* agt. *Brown*, 3 *Watts & S.*, 395, 401).

But proof must be given of the rate allowed by *lex loci contractus*, otherwise it will be presumed to be the same as that of the forum (*Leavenworth* agt. *Brockway*, 2 *Hill*, 201, 203 ; *Wood* agt. *Cord*, 4 *Met.*, 203 ; *Cheney* agt. *Arnold*, 15 *N. Y.*, 353).

This legal rate of interest cannot be proved by parol ; the law establishing it must be produced (*Talbot* agt. *Peoples*, 6 *J. J. Marshall*, 200 ; *Burton* agt. *Anderson*, 1 *Texas*, 93).

Our courts cannot take judicial notice of the law of any other state (*Holmes* agt. *Broughton*, 10 *Wend.*, 75).

No proof whatever was offered by the plaintiff on this point, therefore, interest at seven per cent. only should have been allowed.

VIII. The justice erred in not directing the jury to find a verdict for the defendant.

IX. The exceptions should be sustained, and a new trial ordered, with costs to abide the event.

OWEN, NASH & GRAY, *attorneys for plaintiff*.
S. P. NASH, *of counsel*.

The action was brought upon a judgment recovered in the district court of California, against the defendant, on the 22d of August, 1851.

The judgment was recovered by Abijah P. Everett and others, and plaintiff sued as their assignee.

The main defense was, that the attorneys who had appeared in California, for the defendant, had appeared without authority, and that the judgment was a nullity.

There was a motion to dismiss the complaint at the close

of plaintiff's case, and after the evidence was all in, various requests and exceptions.

The court directed a verdict for the plaintiff, and ordered the exceptions to be heard, in the first instance, at the general term.

I. The judgment was, that of a court of record of a sister state, and entitled to full faith and credit. The record showed an appearance by attorneys, issue duly joined, a trial had, and judgment entered. This constitutes a valid record. All the objections to the record, embraced in defendant's motion for a nonsuit, are mere matters of practice, irregularities at most, which the court could correct on motion, and do not, therefore, affect the validity of the judgment (*Phillips* agt. *Godfrey*, 7 *Bosw.*, 150; *Smith* agt. *Holmes*, 19 *N. Y.*, 271; *Lazier* agt. *Westcott*, 26 *N. Y.*, 146; *Christmas* agt. *Russell*, 5 *Wal.*, 290).

II. An appearance by attorneys gives a court full jurisdiction, and if the appearance be without authority, this only furnishes ground for opening the judgment in the court in which it was rendered, not for disputing its validity collaterally (*Reed* agt. *Pratt*, 2 *Hill*, 64; *Ward* agt. *Barber*, 1 *E. D. Smith*, 423; 1 *Monell's Pract.*, 2d *Ed.*, 143, 183-4).

Accordingly, in this case, the defendant made application in California, after this action was commenced, to vacate the judgment, and failed.

III. The defendant had the onus of proving the want of authority of the attorneys. But on his own evidence it appeared, that at the period in question, he sent vessels to San Francisco, with freight and goods; that he sent out Edward Rogers there as his agent, to have entire charge of his business; that Rogers put the business of discharging the *Haidee*, one of defendant's vessels, in the hands of Beck & Palmer, a respectable house; that the master had been sued, and the vessel was about being libelled for the same cause of action embraced in the judgment, when it was arranged that the action should be against the defendant as

Howard agt. Smith.

owner, whereupon the attorneys were expressly authorized to appear, and thus save the expenses of a seizure of the vessel, and that their charges for professional services were duly paid through defendant's agent, the said Rogers, and that they corresponded with defendant personally at the time about the questions involved in the litigation.

On this evidence, the court rightly held, that the defendant had entirely failed to make out any want of authority.

IV. The proof as to the assignment of the judgment was quite sufficient.

V. The statute of limitations is only a defense in the state where the statutes exists. Besides, the statute of California was not pleaded, and the defendant did not ask to amend his answer.

VI. The verdict was properly directed for the principal and ten per cent. interest, and judgment should be ordered accordingly.

*By the court,* SPENCER, J.—I think the court below erred in directing a verdict for the plantiff:

*First.* The defendant's counsel asked the court to submit the questions to the jury as one of fact, whether there was or was not authority on the part of the California attorneys (Messrs. Chetwood, Edwards, Rose and Turk), to appear for the defendant in the action (in California), resulting in the judgment now sued upon. The request was denied, and defendant's counsel excepted.

The record of the judgment shows no original process issued against, or served upon defendant, but from the record it appears, that the complaint and answer in the action were filed on the same day (May 6th, 1851), and the answer purports to have been signed by Chetwood, Edwards, Rose and Turk, attorneys for defendant.

This is all that is established by the record, in regard to the appearance of defendant in the action, and upon this, the plaintiff rested his case. Subsequently the defendant

testified in substance, "that he never saw either of the firm of Chetwood, Edwards, Rose & Turk, although he knew of them by name. That he never employed this firm to appear for him in this action, and never employed, nor authorized any one to appear for him in this suit, nor to defend the same, and that he did not know of the existence of the suit at the time of the judgment. He says: 'I first heard there was such a suit, when this action was commenced, about a year ago, had never heard of the California suit before that.' That the only agent he had in California at the time, was one Edward Rogers, whom he sent out to California as his special agent, to attend to his business there. That he never heard of this judgment until he was sued here. That he never was asked to pay this judgment to Mr. Howard (plaintiff) or any one, before being sued."

On the cross-examination and afterwards plaintiff introduced letters and accounts and other evidence, that tended to establish that the firm of Chetwood, Edwards, Rose and Turk, was employed by Beck & Palmer, shipping agents with the consent of Edward Rogers the agent of defendant, but no positive testimony establishes their employment with the consent or direction of said Edward Rogers. It appeared from the evidence, that at the time of the trial, Edward Rogers was dead. I am clearly of the opinion, that this question of authority to the attorneys who appeared for the defendant in the California action was, or became a contested question of fact, upon which there was evidence on both sides.

The testimony of the defendant was most positive and clear on the subject of authority, and I think, fully established the fact, that these attorneys were not retained or employed by him personally in that case, nor by his agent (Rogers) with his (defendant's) knowledge or consent. The testimony opposed to this statement of defendant, raised the hypothesis or tended to establish the fact, that the attorneys derived their authority to appear from Beck & Palmer, who derived their

authority to employ and retain them, from Edward Rogers, but to say, the most of this proof adduced by plaintiff, to contradict or to rebut the testimony of defendant on this point, it was vague and uncertain, and in my view of the case, not of sufficient weight and certainty to justify the conclusion of the court below, that the authority of the attorneys Chetwood, Edwards, Rose & Turk, to appear for the defendants, was so fully and conclusively established, that the question of such authority need not be submitted to the jury as a question of fact. The decision of questions of fact in a case by the court, when uncontested, or when clearly established by the weight of testimony, narrow the issues and reduces the number of questions for the consideration of the jury, and thus lessen its labors in reaching a verdict, and in this view, are to be favored and sustained to the full extent of the rules of law applicable to jury trials.

The rulings of the court, however, in such cases are often subject to review, and reviewed by an appellate court although a decision by the jury would have been final upon the same facts.

I hold, that all questions of fact, that are contested to that degree by the evidence that sensible men might conscientiously arrive at different conclusions, upon the same evidence, should be submitted to the decision of a jury.

The rule of law, I hold to be the same as in the case of directing a verdict by the court. The court has a right so to direct when the facts are so clearly established on the trial, or the weight of evidence so strong, that if on submission to a jury it found a verdict against them, the court should set it aside as against the evidence. Applying this rule to this case, I do not think, if the question of authority had been submitted, and a jury had found, that there was no authority, and consequently, found for the defendant, that any court would set aside their verdict as against evidence. I am of the opinion, it was clearly a question that under the evidence, should have been submitted to the consideration

and decision of the jury, and it was error on the part of the court to refuse so to do.   I also hold, as a conclusion of law, that whenever it appears by the record of a judgment of, a sister state, that the defendant appeared by attorney, it is presumptive evidence of the fact, but in such a case, the defendant may rebut this presumption by proof, that the attorney named in the record, never had any authority to appear for him, in other words, "notwithstanding the recital of the record, he may disprove the authority of the attorney to appear."

The cases cited by defendant's counsel on the argument are, in my opinion conclusive as to the law in such cases (*Shumway* agt. *Stillman,* 6 *Wend.,* 447, 453 ; *Starbuck* agt. *Murray,* 5 *Wend.,* 148 ; *Levy* agt. *Levy,* 1 *Hill,* 597).

The opinion and decision of Chief Justices SAVAGE and BRONSON, in these cases are not weakened by the guesses and dicta of other judges in the cases cited by plaintiff's counsel.

In the case of *Bolton* agt. *Jacks,* (6 *Robt.,* 198, *&c.,*) there is a very full review of cases touching this point.   My attention has been called to a late case decided in the court of appeals (*Brown* agt. *Nichols,* 42 *N. Y.,* 27).   That case arose upon and related to a judgment in this state, and the judges reviewing the same recognize a distinction, and that a different rule applies to judgments of another state.   Although there is a diversity of opinion among the judges before whom the case at bar has been heard, as to the questions arising therein, we do not consider the same as effected· by the decision in *Brown* agt. *Nichols.*   As for myself, I agree with the views of Judge GROVER, as expressed in his dissenting opinion, so far as he discusses this question of the affect of appearance, and I believe, these views should be, and will be finally adopted as the rule in like cases.

In regard to the other principal exceptions in this case, a majority of the members of this court holds, that there was no error in the rulings of the court below, and there-

fore, their discussion has been avoided, and the present decision is based entirely upon the question of appearance in the California court.

The exception to the ruling of the court below upon that question should be sustained, and a new trial ordered with costs to the defendant, to abide the event.